# Supreme Court of Texas

No. 23-0611

In re Taylor Brock Peters,
*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Justice Lehrmann did not participate in the decision.

Plaintiffs sued relator Taylor Brock Peters for injuries they sustained when his vehicle rear-ended theirs. Peters was also charged with the crime of intoxication assault. During discovery, the trial court ordered Peters to identify the bars that had served him alcohol, rejecting his assertion of the Fifth Amendment privilege against self-incrimination. We hold that the privilege applies and conditionally grant Peters' petition for writ of mandamus.

At 10:31 p.m., Austin police received multiple 911 calls about a crash on the IH 35 service road. When officers arrived on scene, they found that a Toyota Tacoma driven by Peters had crashed into the back of a Toyota 4Runner occupied by two brothers, Constantino Palma, Jr. and E.P., a minor, while the 4Runner was stopped at a red light. Peters' vehicle struck theirs with such force that the 4Runner's tailgate was

shoved through the cargo compartment into the second-row seating area. The Palmas were transported to a hospital where they were treated for multiple fractures and internal injuries. E.P. was intubated and treated for a skull fracture and brain hemorrhage.

Peters was also admitted to a hospital. Shortly after his arrival, Officer Andrew Upton found Peters in his room, confined to a hospital bed with facial swelling and a bandaged forehead. His clothes were soiled and his eyes bloodshot. Upton noted that Peters mumbled, slurred his speech, and appeared to be confused and disoriented. Upton detected a strong odor of alcohol on him. When Upton inquired about the accident, Peters responded that he had been at two bars whose names he could not remember, that he drank only three beers, and that he remembered being "buzzed" and then trying to drive home. At 11:37 p.m., Upton administered a preliminary breath test, which showed that Peters had a blood-alcohol concentration of 0.196. Peters was arrested and charged with two counts of intoxication assault with a motor vehicle. *See* TEX. PENAL CODE § 49.04.

The Palmas sued Peters for negligence and gross negligence. They served interrogatories on Peters asking where he was "coming from, and . . . going at the time of the accident" and where he had "been before the collision." The Palmas wanted the names of the bars that had served Peters alcohol in order to initiate a timely dram shop action.[1] The Palmas also asked similar questions during Peters' deposition. In

---

[1] The running of limitations on such an action does not moot Peters' request for relief here because the Palmas may use the requested discovery in their suit.

2

each instance, Peters refused to provide information and invoked his Fifth Amendment rights. The trial court granted the Palmas' motion to compel, and the court of appeals denied Peters mandamus relief.[2]

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The privilege also extends to civil litigation and may operate as a bar against discovery. *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995). The privilege against self-incrimination applies to testimony that could directly incriminate a witness or furnish an evidentiary link that might tend to incriminate him. *Ex parte Butler*, 522 S.W.2d 196, 199 (Tex. 1975); *Dendy v. Wilson*, 179 S.W.2d 269, 275 (Tex. 1944).

The privilege is not absolute, however. The trial court must be satisfied that the witness's refusal to answer is "based upon [his] good faith . . . and is justifiable under all of the circumstances." *Butler*, 522 S.W.2d at 198. Even so, we have cautioned trial courts that before compelling a witness to answer, it must be "'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency' to incriminate." *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 488 (1951)).

The Palmas contend that this case is different because the assertion of the privilege interferes with the workings of the civil justice

---

[2] The trial court's order also required Peters to comply with four requests for production. Peters has not challenged that part of the trial court's order.

system. The answers they seek are critical, they argue, because Peters' silence effectively bars their potential dram shop action. But we have held that a valid assertion of the privilege prevails over the civil justice system's needs. *See Ex parte DeLeon*, 972 S.W.2d 23, 24-25 (Tex. 1998) (holding that a witness whom defendants believed to have been employed by the plaintiffs' attorney could not be forced to testify in a case where the defendants alleged that the plaintiffs' attorney had committed insurance fraud); *Butler*, 522 S.W.2d at 197, 199 (holding that a witness could not be forced to testify about whether a paved "road was built with or without [his] consent," no matter how "critical" the answer was to the State's proof in a civil case).[3]

Our decisions command the same result here. Compelling Peters' answers could furnish a link in the chain of proof that might tend to incriminate him. And there is nothing imaginary about Peters' fears that his compelled responses might be used against him in a criminal case; the State of Texas is prosecuting him on the very same facts that underlie this civil case. Active criminal proceedings are not required to claim the privilege, of course. Where such proceedings are ongoing,

---

[3] *See also In re Nichol*, 602 S.W.3d 595, 599, 605 (Tex. App.—El Paso 2019, orig. proceeding) (protecting relator's refusal to answer an interrogatory asking him to "[s]tate where you had been just prior to the wreck, where you were going, and the purpose of the trip," despite that being the only way for the real parties to discover the location where the relator was consuming alcohol before the limitations period ran); *In re Charles*, No. 01-18-01112-CV, 2019 WL 2621749, at *1, *3 (Tex. App.—Houston [1st Dist.] June 27, 2019, orig. proceeding) (protecting relator's refusal to answer an interrogatory asking him to "[i]dentify by name, address and phone number each . . . business or location [where] you were sold, served, or provided or consumed any alcoholic beverages").

4

however, courts should be loath to second-guess the privilege's application.

The Palmas argue that even if the privilege would otherwise apply, Peters waived it by disclosing to Officer Upton that he had visited two bars, drank three beers, and felt buzzed. They cite *Rogers v. United States*, 340 U.S. 367 (1951), for the rule that when a witness voluntarily discloses an incriminating fact, the privilege cannot be invoked to prevent disclosure of the details. In *Rogers*, the witness testified before a grand jury that she had previously held the position of treasurer of the local Communist Party and that, by virtue of her position, she had possessed the party's membership list. Rogers then testified that she had turned the list over to another but refused to identify that person, giving, as her only reason, that she did not want to subject the recipient "to the same thing that I'm going through." *Id.* at 368. Rogers was held in contempt and jailed. Two court appearances later, she asserted the privilege for the first time. The district court ruled that Rogers' refusal was not privileged and renewed its contempt order.

The Supreme Court upheld the order. *Id.* at 375. Rogers' voluntary testimony about her own membership was critical; "she had freely described her membership, activities and office in the Party," and, therefore, the damage was done. *Id.* at 372. "Since the privilege . . . presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue here would not further incriminate her," the Court explained. *Id.* at 372-73. The Palmas hang their hat on what the Court said next: "Disclosure of a fact waives the privilege as to details." *Id.* at

5

373. But the opinion makes clear that for the rule to apply, the initial disclosure must follow a voluntary waiver of the privilege. *See id.* If the initial disclosure meets the high test for waiver,[4] then the trial court must determine whether the question the witness is refusing to answer "present[s] a reasonable danger of further [in]crimination in light of all the circumstances." *Id.* at 374.

The Palmas skip the critical first step. They refer to Peters' statements to Upton as voluntary, but they do not attempt to show a voluntary, knowing, and intelligent waiver of privilege in the record. Indeed, the record cuts against such an argument. Upton's arrest affidavit notes that Peters was "[c]onfused" and "[d]isoriented." It states that Upton interrogated Peters while he was "confined to [a] hospital bed," with a "cut on his forehead that was causing swelling around his face." The preliminary breathalyzer test performed about an hour after the accident measured Peters' blood-alcohol concentration at a level far above the legal limit.

Peters also faces a reasonable danger of incrimination from disclosing his whereabouts before the collision. The Palmas argue, essentially, that the evidence adduced from Peters at the hospital is enough to convict him, so disclosing the names of the bars he visited would not make things worse. But the amount of evidence already collected against Peters is irrelevant: "[T]he witness need only show that an answer to the question is likely to be hazardous to him . . . ." *Butler*,

---

[4] A waiver of the Fifth Amendment privilege must be "made voluntarily, knowingly and intelligently." *Colorado v. Spring*, 479 U.S. 564, 572 (1987) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

522 S.W.2d at 198. In *Rogers*, disclosing the name of Rogers' successor as treasurer of the local Communist Party would not increase the danger that Rogers would be prosecuted; it would increase the danger of another person's being prosecuted. *See Rogers*, 340 U.S. at 371 ("Petitioner expressly placed her original declination to answer on an untenable ground, since a refusal to answer cannot be justified by a desire to protect others from punishment . . . ."). Here, by contrast, Peters' discovery responses could further incriminate him by leading to evidence that Peters drank more than the three beers he claimed.

Without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief. We direct the trial court to vacate the part of its order granting the motion to compel as to interrogatories 24 and 25 and to then deny the motion as to those interrogatories. We are confident that the trial court will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** October 4, 2024

7